IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK GLASKER INGRAM,                    07-CV-216-BR

        Plaintiff,                    OPINION AND ORDER

v.

RICK SOTHERN and MULTNOMAH
COUNTY,

        Defendants.


**FRANK GLASKER INGRAM**
13901 S.E. Schiller
Portland, OR 97236

        Plaintiff, *Pro Se*

**AGNES SOWLE**
Multnomah County Attorney
**CARLOS J. CALANDRIELLO**
Assistant Multnomah County Attorney
501 S.E. Hawthorne Blvd.
Suite 500
Portland, OR 97214
(503) 988-3138

        Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#23).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

In 1986 Plaintiff was convicted in California of Sexual Battery in violation of California Penal Code § 243.4.  As a result, Plaintiff was required to register as a sex offender under California Penal Code § 290.

At some point, Plaintiff moved to Oregon.  On February 17, 1999, authorities at the Oregon Corrections Intake Center (OCIC) informed Plaintiff that he was required to register as a sex offender due to his California conviction for Sexual Battery.

On June 15, 2004, Plaintiff was convicted of Delivery of a Controlled Substance in violation of Oregon Revised Statute § 475.992.[1]  Plaintiff was sentenced to bench probation for a term of 36 months.  On August 11, 2004, a Multnomah County Circuit Court judge revoked Plaintiff's probation and sentenced Plaintiff to a prison term of 24 months and a term of 24 months post-prison supervision as a result of Plaintiff's violation of a number of the conditions of his probation.

_____

[1] In 2005, the Oregon Legislative Counsel renumbered this statute to § 475.840.

2 - OPINION AND ORDER

On November 8, 2005, the Parole Board issued an Order of Supervision Conditions that included the following special conditions:

> 5.  Offender shall submit to random polygraph tests as part of a sex offender surveillance program.  Failure to submit to the test may result in return to the Department of Corrections custody.  Specific responses to the tests shall not be the basis for return to the Department of Corrections custody.  AT DIRECTION OF SUPERVISING OFFICER ONLY.
>
> 6.  Offender shall enter and complete or be successfully discharged from a recognized and approved sex offender program which may include polygraph and/or plethysmograph testing and a prohibition on possession of printed, photographed or recorded materials that the offender may use for the purpose of deviant sexual arousal.
>
> 10.  Other: . . . CURFEW/ESP/GEOGRAPHICAL RESTRICTIONS PER PO.
>
> 11.  Offender shall have no contact direct or indirect with those listed below:  NO CONTACT WITH, INCLUDING DIRECT OR INDIRECT, SECOND OR THIRD PARTY OR KNOWINGLY BE WITHIN 1000 FEET OF THE RESIDENCE, EMPLOYMENT, SCHOOL, DAYCARE OR MOTOR VEHICLE WITHOUT PRIOR WRITTEN CONSENT OF THE PAROLE OFFICER WITH TINA INGRAM OR HER FAMILY; CONTACT WITH MYKOL INGRAM IS ONLY WITH PRIOR WRITTEN APPROVAL OF SUPERVISING OFFICER.  NO ASSOCIATION WITH CO-DEFENDANTS, BRANDON DAVIDSON AND CHARLES WILLIAMS.

Sothern Decl., Ex. 7 at 1.  The order also required Plaintiff to comply with several general conditions that included refraining from using controlled substances, participating in testing for controlled substances, obtaining gainful employment, and

remaining in Oregon.  On November 15, 2005, Plaintiff signed the Order of Supervisory Conditions "without prejudice."  On that date, Plaintiff was released from custody and began serving his 24-month term of parole.

On November 28, 2005, Plaintiff requested administrative review of his conditions of parole in which he asked the Parole Board to remove a number of the conditions, including special conditions 5 (polygraph testing), 6 (sex-offender treatment program), 10 (geographical restrictions), and 11 (no contact). On July 31, 2006, the Parole Board issued an Administrative Review Response in which it denied Plaintiff's requested relief. The Parole Board noted it imposed conditions 5 and 6 because Plaintiff was convicted of Sexual Battery in California and condition 11 because Tina Ingram had a restraining order against Plaintiff; reported Plaintiff had violated restraining orders in the past; and feared for her safety and the safety of their son, Mykol Ingram.

On October 20, 2006, a Portland police officer cited Plaintiff for offensive littering.  Thereafter the Multnomah County District Attorney's Office charged Plaintiff with one count of Offensive Littering and one count of Indecent Exposure.

On November 17, 2006, Plaintiff was arrested pursuant to a Washington County Circuit Court criminal nonsupport warrant for his failure to pay child support.  On November 21, 2006, a

Multnomah County Circuit Court judge issued a Bench/Arrest
Warrant and Order Revoking Release for Plaintiff's failure to
appear in relation to the Offensive Littering and Indecent
Exposure charges.  On that same day, Plaintiff was booked into
the Washington County Jail on the criminal nonsupport warrant and
on the Multnomah County Bench/Arrest Warrant.

On December 4, 2006, Defendant Rick Sothern, Plaintiff's
parole officer, contacted Officer Bridget Sickon of the Detective
Division of the Portland Police Sex Offender Unit and alerted her
to Plaintiff's 1986 conviction for Sexual Battery.

On December 5, 2006, Plaintiff was booked into the Multnomah
County Detention Center on the Offensive Littering and Public
Indecency charges and for violating the terms of his parole.  On
December 8, 2006, Officer Sickon met with Plaintiff and explained
to him that he was required to register as a sex offender in
Oregon as a result of his Sexual Battery conviction in
California.  Officer Sickon informed Plaintiff that he might be
subject to felony charges if he refused to register.
Nevertheless, Plaintiff refused to sign the registration form.

On December 11, 2006, the Multnomah County District
Attorney's Office filed an Information charging Plaintiff with
one count of Failure to Report as a Sex Offender in violation of
Oregon Revised Statute § 181.599.  On December 18, 2006,
Plaintiff was arraigned on the charge of Failure to Report as a

Sex Offender and entered a plea of "not guilty."  Before trial,
however, Plaintiff agreed to register as a sex offender.  On
March 6, 2007, Plaintiff signed the required forms, and the
Multnomah County District Attorney's Office dismissed the charge
against Plaintiff.

On February 14, 2007, Plaintiff filed a Complaint initiating
this action in this Court and alleging Defendants Rick Sothern
and Multnomah County violated his rights under Title VII,
wrongfully discharged him, and falsely arrested him.  Plaintiff
also brings claims against Defendants under 42 U.S.C. § 1983
alleging Defendants violated his due-process rights and "rights
to freedom of travel interstate and freedom of association" when
they (1) required him to attend "sex offense classes," (2)
required him to register as a sex offender, (3) caused Tina
Ingram to take out a restraining order against him, and (4)
refused to allow him to travel outside of Oregon.

On December 10, 2007, Defendants filed a Motion for Summary
Judgment.  Despite receiving two extensions of time, Plaintiff
did not file any response to Defendants' Motion.[2]

---

[2] On June 7, 2006, the Court issued a Summary Judgment
Advice Notice advising Plaintiff that if he did not submit
evidence in opposition to any motion for summary judgment,
summary judgment would be entered against him if it was
appropriate.

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving

party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


<u>**DISCUSSION**</u>

Defendants move for summary judgment on all of Plaintiff's claims.

## I. **Plaintiff's Title VII Claim**.

Title VII bars unlawful discrimination in employment based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Plaintiff, however, does not allege nor does the record reflect he was employed by Defendants. The Court, therefore, concludes Plaintiff has not established any triable claim under Title VII and, accordingly, grants Defendants' Motion for Summary Judgment as to this claim.

## II. **Plaintiff's State-Law Claims**.

8 - OPINION AND ORDER

As noted, Plaintiff brings a claim for wrongful discharge under Oregon state law.  It appears Plaintiff also may be asserting a claim for false arrest under Oregon state law.

Oregon Revised Statute § 30.265(l) provides in pertinent part:  "The sole cause of action for any tort of . . . employees . . . of a public body acting within the scope of their employment . . . shall be an action against the public body only."  Accordingly, even though Plaintiff seems to bring his claims for wrongful discharge and false arrest against both Defendants, Plaintiff may only bring these claims against Defendant Multnomah County under Oregon law.  The Court, therefore, grants Defendants' Motion for Summary Judgment as to Plaintiff's state-law claims against Defendant Sothern.

**A.    Wrongful Discharge**.

Plaintiff asserts in the body of his Complaint that he brings a claim for wrongful discharge.  As noted, however, Plaintiff does not allege nor does the record reflect that Plaintiff was an employee of Multnomah County or that he was discharged from employment with Multnomah County.  Plaintiff, therefore, has not established any triable claim for wrongful discharge under Oregon law.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for wrongful discharge.

**B.    False Arrest.**

Plaintiff asserts Defendants falsely arrested him for failing to register as a sex offender in December 2006.

Under Oregon law, "the tort [of false arrest] has four elements:  (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful."  *Hiber*, 154 Or. App. at 413 (citing *Lukas v. J.C. Penney Co.*, 233 Or. 345, 353 (1963), and *Walker v. City of Portland*, 71 Or. App. 693, 697 (1985)).

Oregon Revised Statute § 181.597 provides "[a] person required to register in another state for having committed a sex offense in that state regardless of whether the crime would constitute a sex crime in this state" must

> report . . . in person to the Department of State Police, a city police department or a county sheriff's office:
>
> (A) No later than 10 days after moving into this state;
>
> (B) Within 10 days of a change of residence; and
>
> (C) Once each year within 10 days of the person's birth date, regardless of whether the person changed residence.

As noted, Plaintiff was convicted of the crime of Sexual Battery in California.  It is undisputed that Plaintiff's conviction under California Penal Code § 290 mandated lifetime registration as a sex offender in California.  Thus, pursuant to Oregon

10 - OPINION AND ORDER

Revised Statute § 181.597, Plaintiff was also required to register as a sex offender in Oregon.  Plaintiff, however, refused to sign the registration form prior to his arrest.  The Court, therefore, concludes there was probable cause to arrest Plaintiff for failing to register as a sex offender, and, as a result, Plaintiff has not established any triable claim for false arrest.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for false arrest.

## III. Plaintiff's Claims Related to His Sex-Offender Status.

Plaintiff alleges Defendants violated his right to due process when they required him to register as a sex offender and to attend "sex offense" classes.  Plaintiff brings these claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part: "Every person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured."

### A.  Plaintiff's claims are time-barred.

The statute of limitations for § 1983 actions is determined by state law.  *Harding v. Galceran*, 889 F.2d 906, 907 (9th Cir. 1989), *cert. denied*, 498 U.S. 1082 (1991).  Section 1983 actions are characterized as personal-injury actions for statute-of-limitations purposes.  *Id.*  In Oregon, this period is

11 - OPINION AND ORDER

two years from the date of injury.  Or. Rev. Stat. § 12.110(1).
*See also Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir.
1989).

Plaintiff was designated as a predatory sex offender in
California in 1986.  As early as February 17, 1999, Oregon
authorities informed Plaintiff that he was required to register
as a sex offender in Oregon due to his California conviction for
Sexual Battery.  In addition, Plaintiff met with Oregon
corrections officials on January 6, 2000, to review various
conditions of his parole that included registering as a sex
offender.  Plaintiff, therefore, was aware of the asserted
requirement that he register in Oregon as a sex offender as early
as February 1999 and aware of the fact that it was a condition of
his parole by January 2000 at the latest.  The limitations
period, therefore, accrued and began to run no later than January
6, 2000, the date the Parole Board advised Plaintiff of his
designation as a sex offender.  *See Noble v. Bd. of Parole and
Post-Prison Supervision*, 327 Or. 485, 491 (1998).  Plaintiff,
however, did not file his Complaint in this matter until February
14, 2007, which is well beyond the two-year period for filing a
claim under § 1983 challenging his designation as a sex offender.
*See Plumeau v. Sch. Dist. #40 County of Yamhill*, 130 F.3d 432,
438 (9th Cir. 1997).

Accordingly, the Court concludes Plaintiff's claims under

§ 1983 that Defendants violated his due-process rights as a
result of his designation as a sex offender are barred by the
relevant statute of limitations.   The Court, therefore, grants
Defendants' Motion for Summary Judgment as to these claims.

**B.   Plaintiff's claims also are barred in part pursuant to**
   ***Heck v. Humphrey.***

In *Heck v. Humphrey*, the Supreme Court held "habeas
corpus is the exclusive remedy for a state prisoner who
challenges the fact or duration of his confinement and seeks
immediate or speedier release, even though such a claim may come
within the literal terms of § 1983."   512 U.S. 477, 481 (1994).
Thus, a plaintiff cannot maintain a § 1983 action to recover
damages for "harm caused by actions whose unlawfulness would
render [his] conviction or sentence invalid" when his sentence
and conviction have not previously been reversed, expunged,
declared invalid, or called into question upon issuance of a writ
of habeas corpus by a federal court.   *Id*. at 486-87.   The Supreme
Court has also extended this holding to civil-rights actions in
which the plaintiffs seek declaratory or injunctive relief as
well as damages.   *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).
Here Plaintiff challenges the requirement that he register as a
sex offender both in the context of revocation of his parole and
as a preemptive challenge.

Neither the Supreme Court nor the Ninth Circuit has
specifically addressed whether a parolee's challenge to the

13 - OPINION AND ORDER

conditions of his parole fits within the core of habeas corpus. Courts that have addressed the issue generally distinguish between situations in which (1) the parolee challenges the conditions of his parole in the context of his parole being revoked for violation of those conditions and (2) the parolee preemptively challenges the conditions of his parole even though his parole has not been revoked.  Other courts, however, have found challenges to parole conditions when revocation of parole for a violation of those conditions is at issue are, in effect, challenges to the validity of the parole-revocation decision or the plaintiff's continued imprisonment.  Under this view of *Heck*, therefore, revocation of parole must be found invalid in separate proceedings before a parolee can properly bring a § 1983 action. *See, e.g., White v. Gittens*, 121 F.3d 803, 807 (1st Cir. 1997); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996); *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995); *Zupan v. Brown*, 5 F. Supp. 2d 792, 795 (N.D. Cal. 1998).

To the extent Plaintiff here seeks relief that would invalidate a parole-violation decision with Court-ordered "confinement," this action also is barred by *Heck*.

With respect to Plaintiff's attempt to preemptively challenge the conditions of his parole, courts have been less consistent when there has not been a parole revocation.  For example, in *Moreno v. California* the parolee preemptively

14 - OPINION AND ORDER

challenged three conditions of his parole.  25 F. Supp. 2d 1060,
1061 (N.D. Cal. 1998).  The court considered whether the
conditions were part of the parolee's sentence within the meaning
of *Heck* and concluded "it is logical that parole conditions be
considered part of the sentence" because violations of the
conditions of parole could result in further incarceration.  *Id.*
at 1063.  The court, therefore, held a challenge to parole
conditions "is not cognizable under § 1983 unless and until
Plaintiffs demonstrate that the conditions have been
invalidated."  *Id.*

Similarly, the Seventh Circuit in *Drollinger v. Milligan*
considered whether a probationer seeking injunctive relief
relating to certain probation conditions stated a claim under
§ 1983.  552 F.2d 1220, 1222-23 (7th Cir. 1977).  The probationer
sought a declaration that some of her probation conditions were
unconstitutional and requested an injunction against enforcement
of those conditions.  *Id*. at 1222-23.  The court rejected the
probationer's assertion that she could bring a § 1983 claim for
this purpose because she sought to challenge the conditions of
her probation rather than the duration of her probation:

> Because probation is by its nature less confining
> than incarceration, the distinction between the
> fact of confinement and the conditions thereof is
> necessarily blurred.  The elimination or
> substitution, for example, of one of the
> conditions of . . . probation would free [the
> probationer] substantially from her confinement;
> figuratively speaking, one of the "bars" would be

> removed from her cell.  The release from such
> custody, even if only partial, is the traditional
> function of the writ of habeas corpus.

*Id.* at 1225 (citation omitted).  The court further reasoned

probation conditions are part of a probationer's sentence, and

the probationer, therefore, was actually "seeking release from at

least part of [her] sentence" by attacking the conditions.  *Id.*

Thus, the consideration of parole conditions as part of the

parolee's sentence for purposes of the principles in *Heck* is a

fundamental premise in both *Moreno* and *Drollinger*.

In *Yahweh v. United States Parole Commission*, however, the

court concluded habeas corpus was not the exclusive remedy when

the parolee preemptively challenges the conditions of his parole.

158 F. Supp. 2d 1332, 1337 (S.D. Fla. 2001).  The plaintiff in

*Yahweh*, a soon-to-be-paroled prisoner, brought an action

challenging his parole conditions.  The court reasoned prison

conditions and parole conditions were intrinsically similar.

Thus, because inmates may challenge prison conditions through

means other than habeas corpus, the court concluded the same must

be true for challenges to parole conditions.  *Id.* at 1339.  The

court distinguished the Seventh Circuit's concern in *Drollinger*

as follows:

> [S]tringent parole conditions are not, in essence,
> the figurative "bars" that confine the parolee.
> Rather, it is the underlying conviction and
> sentence that confine the parolee, that make him a
> ward of the state rather than a free man.  The
> parolee's ultimate transition to freedom is

16 - OPINION AND ORDER

> defined by the expiration of his sentence, not by
> the removal of a parole condition.

*Id.* at 1339.

None of these cases is binding on this Court. The Court, however, finds the reasoning of the *Yahweh* court persuasive in light of *Wilkinson v. Dotson* in which the Supreme Court casts doubt on the underlying premise of the decisions in *Moreno* and *Drollinger*. 544 U.S. 74 (2005). In *Wilkinson*, prisoners brought claims under § 1983 challenging the procedures employed when they were denied parole. The State asserted the § 1983 challenges were improper because "parole proceedings are part of the prisoners' 'sentences' – indeed, an aspect of the 'sentences' that the § 1983 claims, if successful, w[ould] invalidate." *Id.* at 83. The Court rejected this argument: "*Heck* uses the word 'sentence' to refer not to prison procedures, but to substantive determinations as to the length of confinement." *Id.* (citing *Muhammad v. Close*, 540 U.S. 749, 751 n.1 (2004)). The Court also noted it has "repeatedly permitted prisoners to bring § 1983 actions challenging the conditions of their confinement – conditions that, were [the State] right, might be considered part of the 'sentence.'" *Id.* In any event, the parole board, a body whose authority is "separate and distinct from that of the sentencing judge," has the sole discretion to designate a plaintiff as a predatory sex offender. *V.L.Y. v. Bd. of Parole & Post-Prison Supervision*, 338 Or. 44, 45 (2005). The parole

17 – OPINION AND ORDER

board's designation, therefore, is separate and distinct from the sentence itself.

Applying the Supreme Court's reasoning and the analysis in *Yahweh,* this Court concludes the parole conditions in this case are not part of Plaintiff's sentence.  Although Plaintiff could potentially bring a challenge under § 1983 as to the parole condition of registering as a sex offender or being required to take "sex offense" classes, Plaintiff cannot challenge the legality of requiring him to comply with the parole conditions of registering as a sex offender and taking "sex offense" classes as a means to collaterally attack the validity of his designation as a predatory sex offender.

Accordingly, the Court grants Defendants' Motion for Summary Judgment to the extent that Plaintiff seeks to challenge his designation as a predatory sex offender because such challenge is prohibited in this case by both *Heck* and the statute of limitations pertaining to claims brought pursuant to § 1983.

### C.    Imposition of conditions of parole arising from Plaintiff's classification as a sex offender were proper.

To the extent Plaintiff's claims regarding the conditions of parole that required him to register as a sex offender and to attend classes are not barred by the statute of limitations or *Heck*, the Court concludes Plaintiff has failed to establish the imposition of these parole conditions violated his

constitutional rights.

      **1.   The conditions of parole at issue were proper.**

         Plaintiff appears to allege that Defendants violated his rights to due process when they required him as a condition of parole to register as a sex offender and to take "sex offense" classes.

         Oregon Revised Statute § 144.102(3) provides in pertinent part:

> (a) The board or supervisory authority may establish special conditions as the board or supervisory authority determines necessary because of the individual circumstances of the person on post-prison supervision.
>
> (b) If the person is on post-prison supervision following conviction of a sex crime . . . the board or supervisory authority shall include all of the following as special conditions of the person's post-prison supervision:
>
>             * * *
>
> (F) Entry into and completion of or successful discharge from a sex offender treatment program approved by the board, supervisory authority or supervising officer. The program may include polygraph and plethysmograph testing. The person is
>
> responsible for paying for the treatment program.

In addition, § 144.102(2) allows the Parole Board to include general conditions of parole that require a parolee to "[r]espect and obey all municipal, county, state and federal laws."  Oregon Revised Statute § 181.597 provides "[a] person required to

19 - OPINION AND ORDER

register in another state for having committed a sex offense in
that state regardless of whether the crime would constitute a sex
crime in this state" must

> report . . . in person to the Department of
> State Police, a city police department or a
> county sheriff's office:
>
> (A) No later than 10 days after moving into
> this state;
>
> (B) Within 10 days of a change of residence;
> and
>
> (C) Once each year within 10 days of the
> person's birth date, regardless of whether
> the person changed residence.

As noted, Plaintiff was convicted of the crime of Sexual Battery
in California.  It is undisputed that Plaintiff's conviction
under California Penal Code § 290 mandated lifetime registration
as a sex offender.  Plaintiff challenged the conditions of his
parole related to his designation and registration as a sex
offender, the Parole Board provided him with the opportunity for
a hearing on the matter, and Plaintiff declined to avail himself
of that opportunity.  Moreover, Plaintiff did not appeal the
Parole Board's review of the conditions at issue.

On this record, the Court concludes Defendants did
not violate Plaintiff's rights to due process when they enforced
conditions of parole that required Plaintiff to register as a sex
offender and to take "sex offense" classes.

20 - OPINION AND ORDER

**2.  Oregon's Sex Offender Registration requirements do not violate the United States Constitution's prohibition on *ex post facto* laws.**

Although it is not clear, it appears Plaintiff also is contending Oregon's sex-offender registration requirements violate the United States Constitution's prohibition on *ex post facto* laws in his case because they were enacted after his conviction for Sexual Battery.

In *Smith v. Doe*, 538 U.S. 84 (2003), the Supreme Court considered whether Alaska's sex-offender registration and notification law constituted retroactive punishment forbidden by the *Ex Post Facto* Clause of the United States Constitution.  To determine whether a statute violates the *Ex Post Facto* Clause, the Court noted it must first determine the intent of the legislature.  If the legislature intended to impose punishment, "that ends the inquiry." *Id.* at 92.  If the intent of the legislature was "to enact a regulatory scheme that is civil and nonpunitive," the Court then must "further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it 'civil.'" *Id.* (citing *Kansas v. Hendricks*, 521 U.S. 346 (1997))(quotations omitted).

> Because [the Court] ordinarily defer[s] to
> the legislature's stated intent, only the
> clearest proof will suffice to override
> legislative intent and transform what has

been denominated a civil remedy into a
criminal penalty.

*Id.*

In *State v. MacNab*, 334 Or. 469 (2002), the Oregon
Supreme Court examined Oregon's sex-offender registration
statutes in light of the defendant's challenge to them under the
*Ex Post Facto* Clauses of the United States Constitution and the
Oregon Constitution.  The defendant asserted enforcement of
Oregon's sex-offender registration statute in his case violated
the *Ex Post Facto* Clauses of the United States Constitution and
the Oregon Constitution because the defendant was convicted of a
sex crime in 1987, which was years before the sex-offender
registration statutes were enacted.  *Id.* at 469.  The Oregon
Supreme Court followed the test set out in *Hendricks* and applied
in *Smith* and concluded Oregon's sex-offender registration
statutes did not violate either the United States Constitution or
the Oregon Constitution.  *Id.* at 481.  The court reasoned:

> When the legislature passed the sex offender
> registration law in 1991, it declared
> expressly that "[t]he purpose of ORS 181.517,
> ORS 181.518 and ORS 181.519 and sections 4 to
> 6 [making failure to register a crime] of
> this Act is to assist law enforcement
> agencies in preventing future sex offenses."
> Or. Laws 1991, ch. 389, § 7.  The operation
> of the law conforms to the legislature's
> declared purpose.
>
> As a practical matter, the 1995 registration
> law does little more than obtain information
> to update the already existing Law
> Enforcement Data Systems (LEDS) entry

> describing an offender and the offender's
> criminal history.  The time and physical
> demands of complying with the annual
> registration and change of address reporting
> requirements in the 1995 law are so minimal
> that they cannot be considered the imposition
> of a detriment, restraint, or deprivation on
> the offender.

*Id.* at 480-81.  The court also noted

> The 1995 registration requirement does not
> subject an offender to undue restraint in the
> form of comprehensive or intrusive police
> scrutiny, control, or monitoring. . . .  To
> the extent that the police may regard
> registered sex offenders as possible suspects
> in the investigation of sex crimes,
> ultimately that is a function of the
> offender's criminal history.  Similarly, to
> the extent that an offender is deterred by
> the registration requirement from committing
> future crimes, the deterrent effect is a
> secondary or ancillary one, similar to the
> deterrent effect associated with civil
> sanctions such as driver license suspensions,
> and Oregon State Bar suspensions and
> disbarments.  *See e.g., In re Harris*, 334 Or.
> 353 (2002)(lawyer disciplinary proceeding not
> punishment); *Burbage v. Dept. of Motor
> Vehicles*, 252 Or. 486, 491 (1969)(suspension
> proceeding nonpunitive); *State v. Robinson*,
> 235 Or. 524, 532 (1963) (driver license
> revocation proceeding not punishment nor
> intended to be punishment); *Ex parte Finn*, 32
> Or. 519, 531 (disbarment proceeding not
> punishment).

*Id.* at 481.

> Based on the above, the Oregon Supreme Court

concluded

> requiring defendant to register as a sex
> offender does not impose any significant
> detriment, restraint, or deprivation on
> defendant and, therefore, is not a form of

23 - OPINION AND ORDER

> increased "punishment" prohibited by Article
> I, section 21, of the Oregon Constitution.

*Id*.  The court then addressed whether Oregon's sex-offender
registration statutes violated the *Ex Post Facto* Clause of the
United States Constitution.  The court again noted the purpose of
the statutes as set out by the Oregon Legislature.  The court
found "[r]equiring offenders to apprise law enforcement officials
of basic identifying information, including the offender's
whereabouts, is consistent with the legislature's declared
purpose."  *Id*. at 481-82.  The court concluded, therefore, "the
purpose of the registration requirement is regulatory" and moved
on to the second step of the *Hendricks/Smith* analysis.  *Id*. at
482.  The court considered a number of factors, including

> (1) whether the registration requirement
> involves an affirmative disability or
> restraint; (2) whether the registration
> requirement historically has been regarded as
> a punishment; (3) whether the registration
> requirement comes into play only on a finding
> of scienter; (4) whether the registration
> requirement promotes the traditional aims of
> punishment-retribution and deterrence;
> (5) whether the behavior to which the
> registration requirement applies is already a
> crime; (6) whether there is some purpose
> other than punishment that rationally can be
> assigned to the registration requirement; and
> (7) whether the registration requirement
> appears excessive in relation to the
> alternative purpose assigned to it by the
> legislature.

*Id*. at n.16.  After considering these factors, the court concluded there is not

> "the clearest proof" that the sex offender registration scheme is punitive in either its purpose or effect.  It follows that requiring defendant to register as a sex offender does not impose increased punishment not annexed to defendant's 1987 sex crime and, therefore, does not violate the ex post facto clause of the United States Constitution.

*Id*. at 482.

This Court is bound to follow the Oregon Supreme Court's interpretation of Oregon law.  *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001)("When interpreting state law, we are bound by decisions of the state's highest court.").  Thus, pursuant to *MacNab*, this Court concludes Oregon's sex-offender registration statutes do not violate the *Ex Post Facto* Clause of the Oregon Constitution. In addition, even though this Court is not bound by the Oregon Supreme Court's interpretation of the United States Constitution, this Court finds the reasoning and analysis of *Macnab* persuasive. The Court, therefore, concludes Oregon's sex-offender registration statutes do not violate the *Ex Post Facto* Clause of the United States Constitution.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim that Defendants violated his rights under the United States and Oregon Constitutions by enforcing the conditions of his parole that

25 - OPINION AND ORDER

required him to register as a sex offender and to attend "sex offense classes."

IV.  **Limitations on Plaintiff's Freedom of Association**.

Plaintiff alleges Defendant Sothern violated Plaintiff's rights to "free association" by persuading Tina Ingram to take out a restraining order against Plaintiff.

Conditions of parole may affect some of the freedoms enjoyed by law-abiding citizens, including the freedom of association guaranteed under the First Amendment to the United States Constitution.  Nevertheless, the constitutionality of a parole condition is a fact-specific inquiry.  *Cordell v. Tilton* 515 F. Supp. 2d 1114, 1122 (S.D. Cal. 2007)(citing *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003)).  "A special condition of parole will be upheld if it has a rational basis and is reasonably related to the nature of the offense and the history and characteristics of the offender."  *Id*. (citing *T.M.*, 330 F.3d at 1240).

In *Cordell*, the plaintiff challenged a condition of his parole that prohibited him from entering Orange County, California.  *Id*. at 1117.  The plaintiff pled guilty to committing a violent assault against a victim who resided in Orange County, and the victim requested the plaintiff not be returned to Orange County.  *Id*. at 1122.  Under these circumstances, the court concluded a rational basis existed for

26 - OPINION AND ORDER

the government to prohibit the plaintiff from entering Orange County. *Id*. Because, however, the conditions of parole did not provide the plaintiff with the option to pursue an exception to this restriction even though the plaintiff's children resided in Orange County, the court found "the absolute restriction from entering Orange County in [p]laintiff's case is overbroad and not reasonably related to accomplishing the government's objective." *Id*. Accordingly, the court concluded that condition of parole violated the plaintiff's right to free association under the First Amendment to the United States Constitution.

As a preliminary matter, Plaintiff has argued but has not established that Defendant Sothern persuaded Tina Ingram to get a restraining order against Plaintiff. Tina Ingram obtained a restraining order against Plaintiff prohibiting contact with her or Mykol Ingram. Tina Ingram also expressed fear on a number of occasions that Plaintiff would violate that order as he had done in the past. The Court, therefore, concludes there was a rational basis underlying the condition of parole prohibiting Plaintiff from contacting Tina or Mykol Ingram. In addition, unlike in *Cordell,* the parole condition included a provision that allowed Plaintiff the opportunity to seek an exception to the condition "with prior written approval of [his] supervising officer." Thus, to the extent that Plaintiff intends to allege the condition of his parole that prohibits him from having

contact with Tina Ingram or Mykol Ingram without permission from
his parole officer violates his freedom of association, the Court
concludes the condition is not overbroad and Plaintiff's claim is
without merit.

Accordingly, the Court grants Defendants' Motion for Summary
Judgment as to this claim.

**V.    Restrictions on Plaintiff's Interstate Travel.**

Plaintiff contends Defendants violated his "right to travel
interstate" under the Due Process Clause of the United States
Constitution when they refused to allow him to travel outside of
Oregon.  In effect, Plaintiff challenges the condition of his
parole that requires him to "remain in the State of Oregon until
written permission to leave is granted by the Department of
Corrections or a county community corrections agency."

The Ninth Circuit has held "an individual's constitutional
right to travel, having been legally extinguished by a valid
conviction followed by imprisonment, is not revived by the change
in status from prisoner to parolee. " *Bagley v. Harvey*, 718 F.2d
921, 924 (9th Cir. 1983).  In *Bagley*, the Ninth Circuit noted
"[t]here can be no doubt that [the plaintiff's] constitutional
right to interstate travel was extinguished upon his valid
convictions and imprisonment." *Id*. (citing *Meachum v. Fano*, 427
U.S. 215, 224-25 (1976)).  The court concluded "[s]ince, to this
date, [the plaintiff] has never regained that freedom of travel

28 - OPINION AND ORDER

he lost upon conviction, he may not invoke the due process clause of the fifth amendment to compel the Government to grant him the desired right."  *Id*.

Here as in *Bagley*, Plaintiff's constitutional right to interstate travel was extinguished upon his valid convictions and imprisonment.  Because Plaintiff "has never regained that freedom of travel," this Court concludes Plaintiff has not established the condition of his parole that requires him to remain in Oregon violates his right to due process under the United States Constitution.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to this claim.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#23) and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 14th day of July, 2008.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


29 – OPINION AND ORDER